ADAMS, Justice.
Mary McPhearson filed a declaratory judgment action to determine whether the proceeds from a timber sales contract that had been paid into a trust created by John Lewis McPhearson, Mary’s deceased husband, were income or became part of the corpus of the trust. The trial court held that the proceeds were income and entered a judgment so declaring. We reverse that judgment and remand the cause.
Rosa McPhearson had several children, one of whom was John Lewis McPhearson. John married and had four children. After his first wife died, he married Mary, the plaintiff in this action, and they had three children together. John’s seven children are the defendants in this action; however, only the four children of his first marriage appeal. Mary and AmSouth Bank, N.A., are co-trustees of the trust that John created, and Mary named AmSouth as a defendant in this action. AmSouth does not advocate the position of either Mary or the children.
John died testate, and final disposition of his estate is pending in the Choctaw Circuit Court. Pursuant to his will, Mary is to receive 50 percent of his gross estate. The remainder of his estate is devised in trust *320 pursuant to Item Two of the will, which provides in pertinent part:
“c. The said Mary McPhearson shall receive for her sole benefit the net income from the trust during her natural life.
“d. Trustee is granted the right to execute oil, gas and mineral leases covering the land or covering mineral interests in land. All bonuses, delay rentals and royalties received from existing or future mineral leases shall be considered income.
[[Image here]]
“f. Trustee shall receive all payments made from the cutting of timber or trees from lands under any subsisting cutting or lease contracts. Trustee may sell and convey timber and trees from trust land.

“g. If Trustee finds it to the interest of the Trust to sell and convey any of the corpus of the estate, including timber, the consideration paid therefor shall become a part of the trust property and not an income.

“h. Trustee is not required to give bond or make reports to any court.
“i. This Trust shall terminate upon the death of said Mary McPhearson.” (Emphasis added.)
In 1967, 12 years before his death, John, along with his mother Rosa, and his siblings or their families, entered into three timber sale and purchase contracts with MacMillan Bloedel Products, Inc. (“MacMil-lan Bloedel”), a company that buys and sells timber and wood products, for a 20-year term. The contracts contained an option to renew for two additional 20-year periods. At the end of the first 20 years, which was after John died, MacMillan Bloe-del, instead of exercising its option to renew, in July 1988 entered into a new contract with the entire McPhearson family. Pursuant to that contract, MacMillan Bloe-del would pay the McPhearson family annual rent of $258,560 for the lease of the land; for timber sales, it would pay “1,000 [dollars] and other good and valuable consideration,” for a total payment of $2,000,-000. According to AmSouth, MacMillan Bloedel made payments to AmSouth on behalf of John’s estate for both the $2,000,-000 lump sum payment and the annual rent payments. John McPhearson’s estate’s portion of the lump sum payment was $316,832. Of that lump sum payment, Am-South paid Mary $158,416 and deposited a like amount for the trust into an escrow account opened in July 1988. The portion of the rental payments due John McPhear-son’s estate were paid quarterly at the rate of approximately $12,760, and at the time of the hearing involved in this case, Mary had received three quarterly payments, each of approximately $6,380. The trust had received the same amount, and the funds have been deposited into the escrow account.
Mary seeks a declaration that the proceeds from the MacMillan Bloedel contract that were paid into the trust constitute income, and therefore that she is entitled to those proceeds pursuant to Item Two, part c, of John’s will. John’s children by his first wife, the appellants, contend that those proceeds constitute corpus, according to Item Two, part g. The trial court held for Mary. It declared that the McPhearson family was engaged in a “tree farming operation” and that, accordingly, the disputed funds constituted income. National Bank of Mobile v. Wefel, 252 Ala. 212, 40 So.2d 434 (1949), states that the proceeds of a tree farming operation should be classified as income, not corpus, of a trust.
Most of the arguments on appeal concern whether the McPhearsons were engaged in “tree farming,” within the meaning of Wefel, so that the disputed proceeds should be classified as income. These arguments needlessly complicate the appropriate disposition of this case; they also are inappropriate, for the most part, because they are based on cases that do not address a fact situation where the testamentary intent of the settlor was as clear as it is in the present case. John McPhear-son’s will, in creating the trust, explicitly provided in Item 2, part g, for the present situation. That provision, explicitly addressing timber, states that, if the trustee sells and conveys any of the “corpus” of the estate, including timber, then the con *321 sideration paid for the sale or the conveyance becomes a “part of the trust property and not an income.” Considering that unequivocal provision, we hold that the trial court erred when it held that the disputed proceeds were to be considered income because the McPhearsons were engaged in a tree farming operation.
Mary also argues that Ala.Code 1975, § 19-3-278, classifies the disputed funds as income, not corpus, regardless of what we might have decided concerning tree farming. That Code section addresses the disposition of natural resources in relation to trusts, and it provides, in pertinent part:
“Where any part of the principal consists of an interest in lands, including royalties, over-riding royalties, and working interests, from which may be taken minerals, oil, gas, timber or other natural resources and the trustee or tenant is authorized by law or by the terms of the transaction by which the principal or trust was established to sell, lease or otherwise develop such natural resources, and no provision is made for the disposition of the net proceeds thereof after the payment of expense and carrying charges on such property, such proceeds, if received as rent on a lease or bonus for the execution of the same, shall be deemed income....” (Emphasis supplied.)
In this instance, John clearly made provision for the disposition of the proceeds; indeed, the disposition of the proceeds is the entire basis for this lawsuit. Accordingly, § 19-3-278 is not applicable.
The judgment is due to be reversed and the cause remanded for the trial court to enter an order declaring that the disputed funds are part of the corpus of the trust.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and JONES, ALMON, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., dissents.